UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALYN COPELING, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 10316 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Rosalyn Copeling brought this suit against her former employer, the Illinois State Toll Highway Authority, under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq.* Doc. 1. Copeling is now on her second amended complaint. Doc. 30. The Authority has moved to dismiss Counts II and III of the second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and it also moves under Rule 12(f) to strike Copeling's request for punitive damages in Count I. Doc. 31. The motion is granted.

**Background**

In considering the motion to dismiss, the court assumes the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Copeling's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following

1

facts are set forth as favorably to Copeling as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Copeling, an African-American female, began working for the Authority, an Illinois state agency, in 2007. Doc. 30 at ¶¶ 8-9, 13. The second amended complaint alleges that Pamela Molczan, another Authority employee, "denied [Copeling] work hours, vacation time, preferred shifts, seniority benefits and promotions," as well as "the ability to work her scheduled shift and ordered [her] to work non-scheduled hours in a toll booth with no lights." *Id*. at ¶¶ 18-19. In addition, Molczan forced Copeling to "work non-scheduled hours" by altering her schedule, repeatedly denied her vacation requests, and "frequently insulted, berated, belittled, coerced and verbally abused" her. *Id*. at ¶¶ 21-22, 25. The Authority published on the Internet information regarding Copeling's medical condition and potential litigation involving her, and stopped making her retirement contributions. *Id*. at ¶¶ 17, 20. Authority employees once asked Copeling to falsely testify in a workers' compensation hearing that an African-American employee had faked an injury. *Id*. at ¶ 23. After Copeling refused, her hours were reduced. *Id*. at ¶ 24. Copeling repeatedly informed Michael Doyle, another Authority employee, of her concerns, but he took no action. *Id*. at ¶ 26. The Authority terminated Copeling on December 31, 2012. *Id*. at ¶ 27.

**Discussion**

Count I of the second amended complaint states a disparate treatment claim under Title VII and § 1981. *Id*. at pp. 5-6, ¶¶ 28-38. Count II seeks to state a disparate impact claim under Title VII. *Id*. at pp. 7-8, ¶¶ 28-35. (Copeling purports to bring her disparate impact claim under § 1981 as well, *id*. at p. 7, ¶ 28, but § 1981 recognizes only disparate treatment or intentional discrimination claims, not disparate impact claims. *See Franklin v. City of Evanston*, 384 F.3d

838, 848 (7th Cir. 2004); *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 312 (7th Cir. 1996)). And Count III seeks to state a claim under the IHRA. Doc. 1 at pp. 9-10, ¶¶ 28-34. As noted above, the Authority has moved to dismiss Counts II and III and to strike the punitive damages request in Count I.

I. **Count I: Request for Punitive Damages for the Title VII and § 1981 Disparate Treatment Claim**

Count I alleges that Copeling "is entitled to punitive/exemplary damages in addition to compensatory damages" on her Title VII and § 1981 disparate treatment claim. *Id*. at p. 6, at ¶ 38. The Authority argues that it may not be subjected to a punitive damage award under Title VII and § 1981 because it is a government agency. Doc. 31-1 at 7-8. Copeling fails to respond to this argument, thereby forfeiting the point. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (noting that forfeiture occurs "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2011) (holding that a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver").

The Authority is correct in any event. The Authority is an agency of the State of Illinois. *See* 605 ILCS 10/1 (creating "[t]he Illinois State Toll Highway Authority, as an instrumentality and administrative agency of the State of Illinois"). As a government agency, the Authority is immune from punitive damages under Title VII and § 1981. *See* 42 U.S.C. § 1981a(b)(1) (providing that punitive damages may not be awarded against "a government, government agency, or political subdivision"); *Hildebrandt v. Ill. Dep't of Nat'l Resources*, 347 F.3d 1014, 1031 (7th Cir. 2003) (applying § 1981a(b)(1) to a Title VII claim); *Bell v. City of Milwaukee*,

746 F.2d 1205, 1270 (7th Cir. 1984) (applying § 1981a(b)(1) to a § 1981 claim), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).

For these reasons, the punitive damages request in Count I is stricken. The striking is with prejudice because Copeling has abandoned the request by failing to defend it and also because repleading would be futile; there is nothing that Copeling could plead that would expose the Authority to punitive damages under Title VII or § 1981. *See Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend … where the amendment would be futile."); *Estrada v. Reed*, 346 F. App'x 87, 89-90 (7th Cir. 2009) (affirming the district court's denial of "a futile amendment" where the plaintiff could not state a viable claim).

## II.     Count II: Title VII Disparate Impact Claim

Title VII makes it unlawful:

> for an employer–
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Subsection (a)(1) prohibits disparate treatment, while subsection (a)(2) prohibits employment practices that result in a disparate impact against a protected group. *See Lewis v. City of Chicago*, 560 U.S. 205, 211-12 (2010); *Connecticut v. Teal*, 457 U.S. 440, 448 (1982); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). The disparate impact theory addresses "employment practices that are facially neutral in their treatment of different groups

4

but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001); *see also Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336, 1340 (7th Cir. 1992) (citing *Dothard v. Rawlinsoni*, 433 U.S. 321, 329 (1977)).

Count II alleges that Copeling "and other African Americans as a group were impacted in a disparate manner by [the Authority's] policies in being denied hours, vacation, preferred shifts, seniority benefits, being assigned non-scheduled shifts, having retirement benefits canceled and other negative treatment listed above," while "[s]imilarly situated non-African American employees" were not. *Id*. at p. 7, ¶¶ 29-30. It further alleges that "Plaintiff and other African-American employees … as a group[] were therefore impacted in a disparate manner and were subjected to [the Authority's] unfair policies and practices insofar as that she was impacted in an unequal manner and unlike non-African American employees similarly situated with the [Authority]." *Id*. at p. 7, ¶ 31.

Copeling fails to state a viable disparate impact claim because she does not identify a "facially neutral" policy that adversely impacted African-American employees. The allegations of Count II can be read only as claiming that the Authority purposefully treated African-Americans worse than other employees, not that the Authority instituted facially neutral policies that happened to adversely impact African-Americans. It follows that Count II fails to state a viable disparate impact claim. *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) ("[I]it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.") (internal quotation marks omitted); *Puffer v. Allstate Ins. Co.*, 675 F.3d

709, 717 (7th Cir. 2012) (same). The fact that Count II intersperses its allegations with recitations of the elements of a disparate impact claim—the Authority had a "policy" that "impacted" African Americans "in a disparate manner" because they were denied various employment benefits—is insufficient to forestall dismissal. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011) ("A plaintiff may not rely on mere labels, conclusions, or a formulaic recitation of the elements of a cause of action.").

Count II accordingly is dismissed. The dismissal is with prejudice because this is Copeling's third complaint in this case and because her response brief does not request an opportunity to replead Count II (or any other portion of the second amended complaint) should the Authority's motion be granted in whole or in part. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend).

### III. Count III: IHRA Claim

The IHRA "is intended to secure for all individuals in Illinois freedom from unlawful discrimination in connection with employment, real estate transactions, access to financial credit, and availability of public accommodations." *Blount v. Stroud*, 904 N.E.2d 1, 6 (Ill. 2009). The IHRA "consolidated what had been a patchwork of antidiscrimination law in Illinois by repealing various acts," including the Illinois Equal Opportunity for the Handicapped Act, "but incorporating their principal design, purpose or intent." *Ibid*. (internal quotation marks omitted). "To accomplish its objectives," the IHRA "created" the Illinois Department of Human Rights

6

("IDHR") and the Illinois Human Rights Commission ("IHRC"). *Id*. at 7. "Generally, the [IDHR] investigates 'charges' brought by 'aggrieved parties' claiming 'civil rights violations,' as defined in the [IHRA]," and the IHRC "reviews [IDHR] decisions and adjudicates civil rights 'complaints.'" *Ibid*.

The IHRA has an exhaustion requirement. The complainant first must file a charge with the IDHR within 180 days of the alleged civil rights violation. *See* 775 ILCS 5/7A-102(A). Once the IDHR investigates the charge and issues a report, the complainant has the option, which must be exercised within ninety days of receiving the report, of proceeding before the IHRC or commencing a civil action in court. *See* 775 ILCS 5/7A-102(D). If the IDHR fails to issue a report within 365 days, the complainant has ninety days either to proceed before the IHRC or to commence a civil action. *See* 775 ILCS 5/7A-102(G)(2). Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. *See Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004).

The Authority contends that Copeling did not properly exhaust her IHRA claim because she filed this suit less than 365 days after she perfected her IDHR charge. Doc. 30-1 at 4-5. Copeling responds that as of September 17, 2013, the day she filed her brief opposing the Authority's motion to dismiss, "over three hundred and sixty-five days ha[d] passed since filing of her claim with the Illinois Human Rights Commission." Doc. 36 at 4. This response is doubly insufficient. First, the 365 days is measured from the day the complainant files a charge with the IDHR, not with the IHRC. Second, the 365-day requirement is met only if suit is filed after 365 days has passed since the filing of the IDHR charge; the requirement is not met, as Copeling appears to argue, if the 365 days pass at some point during the pendency of a prematurely-filed suit. *See Rabe v. United Air Lines, Inc.*, __ F. Supp. 2d __, 2013 WL 5433251,

7

at *6-7 (N.D. Ill. Sept. 30, 2013) (holding that the plaintiff failed to exhaust her IHRA claim because the IDHR never issued a right to sue letter or dismissal and the plaintiff filed suit in federal court within a year of filing her IDHR charge). *Anderson v. Cntrs. for New Horizons, Inc.*, 891 F. Supp. 2d 956, 960-61 (N.D. Ill. 2012) (same); *cf. Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 534-36 (7th Cir. 1999) (reaching the same conclusion with respect to exhaustion under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)). The record conclusively establishes that Copeling filed this suit before the 365 days had elapsed; she submitted her IDHR charge on April 3, 2012, and filed this suit on December 26, 2012. Doc. 1; Doc. 7 at 9. It follows that Copeling failed to properly exhaust her IHRA claim and therefore that the claim.

Other than irrelevantly arguing that over 365 days had passed between the day she filed her claim with the IHRC and the day she responded to the motion to dismiss, Copeling provides no other basis to conclude that she properly exhausted her IHRA claim. Doc. 36 at 4-5. Any such argument is therefore forfeited. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("As it turns out, Milligan did not make that argument, either here or in the district court. His failure to do so forfeits the argument."); *Alioto*, 651 F.3d at 721 ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted).

Count III accordingly is dismissed for failure to exhaust. The dismissal is without prejudice. The Seventh Circuit has explained that "the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims." *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 n.11 (7th Cir. 1989). This principle applies to dismissals for failure to exhaust employment discrimination claims before an administrative agency; such dismissals are without prejudice to the plaintiff bringing her claim to federal court upon exhausting the unexhausted claims, subject of course to any applicable defenses. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009); *Hill v. Potter*, 352 F.3d 1142, 1145-46 (7th Cir. 2003).

## Conclusion

For the foregoing reasons, Count II of the second amended complaint is dismissed with prejudice, Count III is dismissed without prejudice, and the request for punitive damages in Count I is stricken with prejudice.

February 11, 2014                                                  _____
                                                                    United States District Judge