UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALYN COPELING, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 10316 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Rosalyn Copeling brought this suit against her former employer, the Illinois State Toll Highway Authority, alleging race discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq*. Doc. 30. (Earlier complaints named four individual defendants, but the second amended complaint, which is the operative complaint, names only the Authority.) The court dismissed Copeling's IHRA claim and Title VII disparate impact claim under Federal Rule of Civil Procedure 12(b)(6). Docs. 49-50 (reported at 2014 WL 540443 (N.D. Ill. Feb. 11, 2014)). The Authority has moved for summary judgment on Copeling's remaining claim, which alleges disparate treatment under § 1981 and Title VII. Doc. 55. The motion is granted.

**Background**

The court makes two preliminary observations before setting forth the facts.

First, the Authority complied with the local rules by filing a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Docs. 55, 55-24. Each factual assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in

1

(3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Copeling's Local Rule 56.1(b)(3)(B) response responds to only four paragraphs (¶¶ 19, 50, 54, 67) of the Authority's Local Rule 56.1(a)(3) statement. Doc. 59. As a result, the court will accept as true all facts asserted in the other paragraphs of the Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56. 1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with a local rule, the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement.").

Second, Copeling's brief makes several factual assertions (*e.g.*, that her supervisors were Caucasian, that she performed her job well and received positive ratings) that are not asserted in the Authority's Local Rule 56.1(a)(3) statement or in her Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 58. Those unsupported facts are disregarded for purposes of summary judgment. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [parties'] Local Rule 56.1 statements.") (internal quotation marks and alterations omitted); *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Gray v. Cannon*, 974 F. Supp. 2d 1150, 1162 (N.D. Ill. 2013) ("Under settled law, facts asserted in a brief but not

presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material").

With that said, the following facts are set forth as favorably to Copeling as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

Copeling is an African-American female. Doc. 55-24 at ¶ 1. The Authority hired Copeling as a toll collector in 2007. *Id*. at ¶ 4. The Authority's "Personnel Policy and Procedures Manual," which Copeling received when she was hired, said this about absences: "[A]n employee who is absent without leave and without properly reporting [her] absences for two … consecutive scheduled workdays will be subject to disciplinary action up to and including discharge." *Id*. at ¶¶ 8-9. Copeling also signed a document explaining that toll collectors "must be available on 24-hour-7-day a week basis and … may be working various locations on the Tollway." *Id*. at ¶ 12; *see also id*. at ¶ 6.

Copeling filed a workers compensation claim in October 2011, alleging that she injured her right hand at work. *Id*. at ¶ 24. The claim was denied because an independent medical examiner determined the injury, diagnosed as carpel tunnel syndrome, was not work-related. *Id*. at ¶ 25.

On several occasions in 2011 and 2012, Copeling applied for leave under the Family Medical Leave Act ("FMLA"). *Id*. at ¶¶ 26-29. Copeling was approved for block leave from November 15-20, 2011, and she was granted intermittent leave at various points during the

following year. *Id*. at ¶ 26. Copeling did not work any days in March 2012. *Id*. at ¶¶ 27-28, 30. The Authority informed Copeling that her FMLA leave covered only a few days per week and that she needed to submit additional paperwork to obtain continuous leave. *Id*. at ¶¶ 27-29. On March 19, 2012, the Authority issued Copeling a notice requiring her to return to work within forty-eight hours. *Id*. at ¶ 31. Copeling eventually completed the paperwork necessary to obtain continuous FMLA leave. *Id*. at ¶ 32. She received continuous FMLA leave from April 1 to June 20, 2012, Authorized Leave Without Pay from June 21 to August 30, 2012, and leave under the Americans with Disabilities Act ("ADA") from August 31 to October 30, 2012. *Id*. at ¶¶ 32-35. By October 30, 2012, Copeling had exhausted all of her available leave. *Id*. at ¶ 35.

In the meantime, on August 31, 2012, Lisa Williams, the Authority's Equal Employment Opportunity and ADA coordinator, emailed Copeling to initiate the ADA-mandated interactive process for evaluating her request for an ADA accommodation and to ask for contact information for her physician. *Id*. at ¶ 38; *see* 29 C.F.R. § 1630.2(o)(3). Copeling responded by providing the name and number of her doctor. Doc. 55-24 at ¶ 38. On October 23, the Authority sent Copeling a letter noting the upcoming expiration of her ADA leave on October 30 and asking that she contact Williams to discuss reasonable accommodations. *Id*. at ¶ 39. On November 6, Williams called Copeling to advise her that they should discuss other accommodation options. *Id*. at ¶ 40. On November 12, the Authority suspended Copeling. *Id*. at ¶ 36. On November 14, Copeling left Williams a message providing the name and number of her attorney. *Id*. at ¶ 41. On November 26, Williams called Copeling three times without receiving a response. *Id*. at ¶ 42. The next day, Williams emailed Copeling, who did not respond. *Id*. at ¶ 43.

On November 29, the Authority sent Copeling a "Forty-Eight Hour Notice," which stated that separation procedures would begin unless she came back to work within forty-eight hours.

*Id*. at ¶ 45.  Copeling did not respond to the notice.  *Id*. at ¶ 46.  On December 31, 2012, the Authority sent Copeling a "Notice of Separation" due to her failure to return to work from October 31 to December 31, 2012.  *Id*. at ¶ 47.

Copeling asserts that her physician did not clear her to return to work until eight days following her termination.  Doc. 61 at ¶ 7.  During her time at the Authority, Copeling was denied the training that others received for the position of "Collector in Charge," which is considered a promotion and comes with higher pay, *id*. at ¶¶ 1-3; she was denied "seniority benefits" and promotions, *id*. at ¶¶ 4-5; and she was falsely accused of violating the Authority's policy against cell-phone use while working, *id*. at ¶ 6.  On April 5, 2010, Copeling was suspended for three days for violating the Authority's policy against picking up coin spillage in a lane with the barrier gate open and the overhead light illuminated green; however, Copeling's supervisors had specifically told her to pick up the coin spillage at that time because the barrier gate was broken and could not be closed.  Doc. 59 at ¶ 19.

## Discussion

As noted above, Copeling's sole remaining claim alleged racially disparate treatment under Title VII and § 1981.  Title VII and § 1981 claims are analyzed under the same framework, so the court will simplify by referring only to Title VII doctrine and precedents.  *See Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013); *Smith v. Bray*, 681 F.3d 888, 895-96 & n.2 (7th Cir. 2012); *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010) ("The same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983.").  Copeling may defeat summary judgment under the direct and indirect methods of proof.  *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *Rodgers v. White*, 657 F.3d 511, 516-17 (7th Cir. 2011).  Because Copeling's response brief does not

identify the method under which she proceeds, the court will consider both. *See Morgan*, 724 F.3d at 997.

"Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman*, 667 F.3d at 845. The appropriate focus under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Morgan*, 724 F.3d at 997 ("The plaintiff's task in opposing a motion for summary judgment is straightforward: he must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that his employer took an adverse action against him because of his race."); *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. In short, direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations and internal quotation marks omitted); *see also Morgan*, 724 F.3d at 995; *Coleman*, 667 F.3d at 860; *Everett*, 655 F.3d at 729. Not surprisingly, the parties' Local Rule 56.1 statements and responses contain no facts that could constitute direct evidence of discrimination.

"A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly

to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citations and internal quotation marks omitted); *see also Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013); *Morgan*, 724 F.3d at 995-96; *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012); *Everett*, 655 F.3d at 729 (explaining that circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences"). Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *see also Chaib*, 744 F.3d at 982; *Perez*, 731 F.3d at 711; *Morgan*, 724 F.3d at 995-96; *Coleman*, 667 F.3d at 860; *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). To overcome summary judgment, circumstantial evidence need not "combine to form a tidy, coherent picture of discrimination, in the same way the tiles of a mosaic come together to form a tidy, coherent image, in order for a plaintiff to survive summary judgment." *Morgan*, 724 F.3d at 997. Rather, "[i]f the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Id*. at 996.

Copeling's brief argues that she "personally witnessed numerous occasions of discrimination to both herself and other African Americans by their Caucasian supervisors" and that "[t]hese discriminatory and harassing acts were motivated by hostility to the Plaintiff's

7

race." Doc. 58 at 2. There is little evidence in the summary judgment record—meaning in the assertions set forth in the parties' Local Rule 56.1 statements and responses that are supported by the attached evidence—that could conceivably support that argument.

First, Copeling asserts that "non-African Americans receiv[ed] more work hours than her." Doc. 59 at ¶ 54. This assertion does not satisfy her burden under the direct method because it does not suggest that any decisionmaker had a discriminatory motive for the action. *See Bunn v. Khoury Enters., Inc.*, __ F.3d __, 2014 WL 2198557, at *6 (7th Cir. May 28, 2014) (holding that a supervisor's disciplining an employee and angrily communicating "I will place you wherever I want" are not evidence of discrimination); *Rhodes*, 359 F.3d at 504 (holding that the plaintiff's "circumstantial evidence … must point directly to a discriminatory reason for the employer's action") (internal quotation marks omitted); *Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997) (holding that a letter from a law school dean to Illinois bar examiners documenting the plaintiff's performance issues in law school and potentially attributing these issues to plaintiff's disability was not evidence of discrimination because the letter "d[id] not exhibit any intent on behalf of [the dean] to discriminate against [the plaintiff]").

Second, Copeling states she "observed the treatment that she received at the hand of her supervisor Pamela Molczan and perceived that behavior as indication that she was denied vacation time because of her race." Doc. 59 at ¶ 54. A plaintiff's own testimony can be enough to survive summary judgment, but only if it is based on the plaintiff's personal knowledge. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("[S]elf-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts. But mere conclusory allegations do not constitute evidence.") (internal quotation marks

8

and alterations omitted). Copeling's beliefs regarding Molczan's motive for denying her vacation time is insufficient because Copeling provides no basis for her beliefs and because nothing in the record suggests that Molczan's actions resulted from racially discriminatory animus. *See Steinhauer v. DeGolier*, 359 F.3d 481, 485 (7th Cir. 2004) (holding that "many of the facts [that the plaintiff] points to provide no insight as to [the defendant's] motivation at all, much less indicate that she discriminated against him," and noting that for the plaintiff "to claim [that the defendant] made these decisions because of [the plaintiff's sex] is mere speculation which cannot defeat summary judgment"); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) ("Johnson's subjective belief that she was better qualified than Bennett does not, without more, demonstrate pretext."); *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841 (7th Cir. 1996) ("Mills may honestly believe that Silver's remarks [that management was out to get rid of her] are evidence of age-related bias, but we disagree and call the plaintiff's attention to other cases in which we have held that the subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact.") (internal quotation marks omitted).

Third, Copeling asserts that "the actions of Ms. Molczan, that were observed by [Copeling] first hand, also indicated that [Copeling's] hours were altered on the schedule by her supervisor because [of] her race." Doc. 59 at ¶ 54. However, the evidence cited by Copeling to support this assertion—a portion of her deposition transcript—shows that Copeling lacks any basis to conclude that Molczan's motive was racial. Specifically, when asked "what do you base [your conclusion that the supervisor reduced your hours because of your race] on," Copeling responded, "[t]he fact that she did it" and "the other things she did to me, cutting my hours." Doc. 55-3 at 32. That is insufficient to forestall summary judgment. *See Steinhauer*, 359 F.3d at 485; *Johnson*, 260 F.3d at 733; *Mills*, 83 F.3d at 841.

9

Fourth, Copeling asserts she "was placed in an undesirable working location due to her race." Doc. 59 at ¶ 54. The evidence cited by Copeling to support this assertion is her deposition testimony that "[s]tatements made by [her] coworkers" indicated that her supervisor "wanted to burn [Copeling] out." Doc. 55-3 at 36. The coworkers' statements are inadmissible hearsay because Copeling has not shown that they had any responsibility for deciding her work location. *See Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822-23 (7th Cir. 2011) ("For an employee's statement to constitute [the exclusion from the hearsay rule under Federal Rule of Evidence 801(d)(2)(D)], she need not have been personally involved in the disputed employment action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action.") (internal quotation marks omitted); *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) (same); *cf. Lopez v. Pactiv Corp.*, 2013 WL 4008626, at *2 (N.D. Ill. Aug. 5, 2013) (admitting testimony where that requirement was met). In any event, that Copeling's supervisor wanted to "burn [her] out" does not give rise to a reasonable an inference that the supervisor was racially motivated. *See Hall v. City of Chicago*, 713 F.3d 325, 333 (7th Cir. 2013) (holding that the "coincidence" of the plaintiff's protected characteristic and "personal animus" towards the plaintiff "alone does not provide an inference of … discrimination").

Copeling's other grievances are similarly unavailing. For example, she complains that the Authority denied her training, seniority benefits, and a promotion, that the Authority falsely accused her of violating a no-cellphone policy, and that she was disciplined mostly for following a supervisor's instructions. Doc. 59 at ¶ 19; Doc. 61 at ¶¶ 1-2, 4-6. There is nothing in the summary judgment record, however, that would allow a reasonable jury to conclude that racial discrimination motivated those actions. Employees of a different race can have negative opinions and take adverse actions—whether based on personal animus or legitimate concerns—

10

without also harboring racial animus and violating Title VII or § 1981. *See Hall*, 713 F.3d at 333; *Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011) (affirming summary judgment for the defendant because the evidence "suggest[ed] that the conduct was the result of personal animus towards [plaintiff], rather than … discrimination").

Copeling also argues the Authority's purported reasons for firing her were pretextual, Doc. 58 at 4-5, which if true could constitute circumstantial evidence that its real reasons were discriminatory. *See Diaz*, 653 F.3d at 587. Copeling contends the Authority "exploited a physical injury that prevented [her] from working to terminate her employment." Doc. 58 at 5. She attempts to support this argument with evidence that her doctor did not "clear" her to return to work until eight days after she was terminated. *Ibid.*; Doc. 61 at ¶ 7. This evidence does not give rise to an inference of pretext. The summary record indisputably shows that the Authority did not terminate Copeling due to her race. Rather, Copeling's termination resulted from her failure to return to work after she exhausted her leave, as required by the Authority's policies, and her failure to respond to the Authority's "Forty-Eight Hour Notice." Doc. 55-24 at ¶¶ 8-9, 12, 26-36, 46-47.

To the extent Copeling suggests that her injury should have entitled her to additional leave, she has still failed to establish pretext. Copeling adduces no evidence that the Authority did not honestly believe its policies warranted her termination. That is, Copeling does not adduce evidence that the Authority's reasons were "a lie" or "phony reason." *Silverman*, 637 F.3d at 733-34 ("Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.") (brackets and internal quotation marks omitted). To the contrary, and as just noted, the evidence indisputably shows that the Authority honestly believed that its policies justified Copeling's termination.

Copeling also attacks the veracity of the Authority's evidence, arguing that "all of the documentary evidence presented by Defendant was generated by Plaintiff's Caucasian supervisors." Doc. 58 at 2-3. This argument is meritless. Copeling cannot defeat summary judgment by attacking the Authority's evidence based simply on the race of the Authority's witnesses and of the individuals who created the relevant documents. Rather, Copeling must adduce evidence of her own that would allow a jury to infer that racial animus motivated the Authority's actions. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she [satisfied the elements of her claim]."); *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) ("It was Contreras's burden on summary judgment to show that he could come up with evidence to show he could meet his ultimate burden …."); *Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) ("To avoid summary judgment, Mr. Pugh must set forth specific facts that demonstrate a genuine issue of triable fact and must produce more than a scintilla of evidence to support his position."). Copeling has adduced no such evidence.

Copeling's disparate treatment claim also fails under the indirect method articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). The indirect method has three steps. First, the plaintiff must make a prima facie case of discrimination, which requires her to establish that (1) she is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than she was. *See Coleman*, 667 F.3d at 845. Second, if the plaintiff makes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate,

nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Third, if the defendant articulates such a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff, who must provide evidence that the defendant's stated reason is pretextual. *Id.* at 804-05. As noted above, "[p]retext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Silverman*, 637 F.3d at 733-34 (brackets and internal quotation marks omitted).

Copeling cannot make her prima facie case because she has not identified a similarly situated individual outside the protected class that received more favorable treatment. Despite her failure, the Authority's Local Rule 56.1(a)(3) statement identifies some possible comparators for Copeling and then sets forth evidence showing the comparators did not receive more favorable treatment. Doc. 55-24 at ¶¶ 55-68. With one immaterial exception (*id.* at ¶ 67), Copeling does not challenge the Authority's assertions and does not otherwise adduce evidence that would allow a reasonable jury to find that the comparators received better treatment. True, her Local Rule 56.1(b)(3)(B) response does assert that "non-African Americans receiv[ed] more work hours than her." Doc. 59 at ¶ 54. However, Copeling does not identify those individuals or show that they are similarly situated, which fatally undermines her submission. *See Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("[To establish the 'similarly situated' prong,] the comparator must ... be similar enough 'to eliminate confounding variables, such as differing roles [or] performance histories … so as to isolate the critical independent variable ….") (brackets deleted); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("In order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is directly comparable to her in all material respects. Factors relevant to this

inquiry include whether the employees … had comparable education, experience and qualifications.") (internal quotation marks and citation omitted).

Copeling also argues that the Authority applied its legitimate employment expectations in a discriminatory manner. Doc. 58 at 3-4. "When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated … employees [without the protected characteristic] in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a *prima facie* case … and proceed to the pretext inquiry." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). Implicitly invoking this principle, Copeling argues: "If [she] failed to meet the job expectations of her employer, it is only because the Authority applied said expectations in a discriminatory manner. … As noted above, all of the allegations of work performance deficiencies against Plaintiff were made by the very people subjecting her to racial discrimination. The allegations of performance flaws are themselves evidence of disparate treatment." Doc. 58 at 3-4.

This argument misunderstands *Peele*. That decision and others like it require evidence that the employer applied its expectations to one group more favorably than it applied them to the plaintiff's group. *See Haung v. Continental Cas. Co.*, __ F.3d __, 2014 WL 2619689, at *2-3 (7th Cir. June 13, 2014) (after noting that "because Huang contends that [the defendant] enforced its job expectations unequally, these two elements [of the prima facie case] merge," and holding that "Huang … provides no evidence that [the defendant] treated other similarly situated non-Chinese workers more favorably"); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013) ("In disparate punishment cases, like this one, the second and fourth prongs merge and are satisfied by a showing that a similarly situated employee outside the plaintiff's protected class

14

committed a similar act but was subjected to less severe discipline."); *Peele*, 288 F.3d at 329 (analyzing whether "the company strictly enforced the Best Practices standards against her" but not against "similarly situated male younger employees"). Because Copeling still fails to identify other individuals that received more favorable treatment—*e.g.*, those that acted similarly but were not disciplined—she has not satisfied her burden under *Peele*. *See Montgomery*, 626 F.3d at 394 ("We have previously noted that when a plaintiff *produces evidence* sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner the second and fourth prongs merge—allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry. Montgomery does allege that American's expectations varied with race, but we decline to merge the second and fourth prongs and proceed to the pretext inquiry because he does not support that allegation with any actual evidence of disparate application. Montgomery may not put the pretext cart before the prima facie horse by substituting allegations for proof.") (internal quotation marks, alterations, and citations omitted). Like the plaintiff in *Montgomery*, Copeling asserts without support that the Authority treated others better than it treated her, and therefore cannot proceed to the pretext inquiry.

In sum, having failed to satisfy her prima facie case, Copeling cannot prevail under the indirect method.

**Conclusion**

For the foregoing reasons, the Authority's motion for summary judgment is granted. With all claims resolved, judgment will be entered in favor of the Authority and against Copeling, and the case will be closed.

July 24, 2014

_____
United States District Judge

15